## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KUCHLER, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-162 SRW |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties have consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF

No. 13. Defendant filed a Brief in Support of the Answer. ECF No. 19. The Court has reviewed

the parties' briefs and the entire administrative record, including the transcripts and medical

evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.    Factual and Procedural Background

On May 1, 2017 and May 11, 2017,[1] Plaintiff Patricia Kuchler protectively filed

applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*.,

and supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 181-

---

[1] The ALJ indicated Plaintiff filed her applications on April 28, 2017; however, review of the record reflects the application for DIB was filed on May 1, 2017 and application for SSI was filed on May 11, 2017. Tr. 192, 198.

99. Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 112-17, 119-23.

Plaintiff and counsel appeared for an initial hearing on November 27, 2018. Tr. 48-83. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Dr. Thomas D. Upton, Ph.D. *Id*. On February 26, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 13-29. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 8-10. On December 18, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found here that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 1, 2017; Plaintiff has the severe impairments of depression, anxiety, and obesity; and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18-19. The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds frequently, balance frequently, stoop frequently, kneel frequently, crouch frequently, crawl frequently. The claimant can work at unprotected heights occasionally, and never operate a motor vehicle. The claimant can perform simple routine tasks in an environment with few changes in setting or duties. She can have occasional interactions with supervisors, coworkers, and the public.

Tr. 20-23. At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a Coding File Clerk, Child Care Attendant or Personal Care Assistant. Tr. 23. The ALJ further found Plaintiff was born on October 11, 1971 and was 45 years old, which is defined as a younger individual age 18-49. *Id.* Plaintiff has at least a high school education and is able to

communicate in English. *Id*. The ALJ determined the transferability of job skills was not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supported a finding that the Plaintiff was "not disabled," whether or not she had transferable job skills. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as Hand Packer (*Dictionary of Occupational Titles* ("*DOT*") No. 920-587-018); Laundry Laborer (*DOT* No. 361.687-018); and Kitchen Helper (*DOT* No. 318.687-010). Tr. 23-24. The ALJ concluded Plaintiff was not under a disability from March 1, 2017 through the date of her decision on February 26, 2019. Tr. 24.

## IV.    Discussion

Plaintiff challenges the ALJ's decision on two grounds: (1) the RFC is not supported by some medical evidence or substantial evidence; and (2) the vocational testimony upon which the decision rests at Step Five is not substantial evidence as to the numbers of jobs available for Plaintiff in the national economy. ECF No. 13 at 4. For the following reasons, the Court finds Plaintiff's arguments to be without merit as the ALJ's decision is based on substantial evidence and is consistent with the Social Security Administration Regulations and case law.

### A.  RFC Determination

The ALJ determined Plaintiff had the RFC to perform medium work with specific additional postural, environmental, and mental limitations. Tr. 20. Plaintiff argues the ALJ's RFC determination was not supported by some medical evidence. Plaintiff also argues the Function Report submitted by Plaintiff's daughter, the Global Assessment of Functioning

("GAF")[2] scores within the record, and the ALJ's acknowledgment of Plaintiff's "persistent disruption of her ability to concentrate and tolerate social interactions" are inconsistent with the RFC determination. In response, the Commissioner argues the ALJ properly determined Plaintiff's RFC because the medical record does not support a disability based on mental or physical impairments.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Nonetheless, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Additionally, an ALJ is not limited to considering only medical evidence in evaluating RFC. *Cox*, 495 F.3d at 619; *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [plaintiff] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). The ALJ may consider a plaintiff's daily activities, subjective allegations, and any other evidence of record when developing the RFC. *Hartmann v.*

---

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See* Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed).

*Berryhill*, No. 4:17-CV-002413-SPM, 2018 WL 4679737, at *6 (E.D. Mo. Sept. 28, 2018) (citing *Cox*, 495 F.3d at 619-20). Although the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. §§ 416.927(e)(2), 416.946.

Plaintiff bears the burden of proving his RFC. *See Moore*, 572 F.3d at 523. Ultimately, the plaintiff is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the plaintiff's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the plaintiff] get medical reports from [the plaintiff's] own medical sources." *Turner v. Saul*, No. 4:18-CV-1230-ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

In determining Plaintiff's RFC, the ALJ properly evaluated Plaintiff's subjective symptoms[3] as described in her Function Report, which included statements that "most days she just wants to hide away in her room," "feels like she is always wrong," and "her life lacks purpose." Tr. 21, 242-43. The ALJ acknowledged Plaintiff's reports of being easily distracted, having trouble dealing with stress and social situations, fear of forgetting things, and a history of employment terminations due to "calling into work too often." Tr. 21, 242-44. The ALJ further considered Plaintiff's testimony at the hearing where she described self-isolation, confusion, heart palpitations and dizziness when stressed, crying spells, disrupted appetite, and thoughts of suicide approximately every two months. (Tr. 21, 57-58, 60, 65, 69).

---

[3] Social Security Ruling ("SSR") 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

However, the ALJ had to consider whether Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were consistent with the medical evidence and other evidence in the record. Tr. 21. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (ALJ's decision may be affected by a determination that Plaintiff's allegations were not credible). In assessing credibility, the ALJ must consider: (1) the plaintiff's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) work history; and (7) the absence of objective medical evidence to support the plaintiff's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a [plaintiff's] subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's symptoms were not entirely consistent with the medical evidence. Tr. 21. In making this decision, the ALJ considered the care she received from her treating physician, Dr. John Emmons. On March 11, 2017, Plaintiff appeared for a follow up visit. She denied medication side effects and had a normal physical and psychiatric examination apart from indications of obesity, hypertension, and hyperlipidemia. Tr. 21, 416-20. Plaintiff returned to Dr. Emmons on June 29, 2017, after an emergency room visit resulting in the removal of an upper abdomen abscess. Tr. 22, 913-917. Other than noted concerns for Plaintiff's obesity, Dr. Emmons reported a largely normal physical and psychological exam. *Id.* Plaintiff

returned to Dr. Emmons on September 14, 2017, January 16, 2018, May 7, 2018, June 7, 2018,

and August 19, 2018, in which Plaintiff's exams continued to be largely normal. Tr. 22, 890-98,

904-12. The ALJ noted that although Plaintiff reported palpitations and swelling of her hands,

feet, and face on May 7, 2018, Dr. Emmons's examination notes reflected she did not have

edema in extremities and her heartbeat was of "regular rate and rhythm" with "no murmurs,

gallops, or rubs." Tr. 22, 901-02.

 The ALJ also considered Plaintiff's care from her treating psychiatrist, Dr. David

Goldmeier, M.D. Tr. 21. The ALJ cited to Plaintiff's May 31, 2017 visit where Dr. Goldmeier

described her as situationally anxious due to an impending hysterectomy. He wrote she was hired

at Dollar General but failed to start her job. Tr. 21, 353. Dr. Goldmeier wrote Plaintiff was

getting six hours of sleep per night, exhibited low concentration and energy, had no suicidal

ideations, and was stable with mild exacerbation. Tr. 21, 353, 357. Dr. Goldmeier indicated

Plaintiff had a normal mental status examination aside from impaired concentration, fair

grooming and eye contact, depressed affect, and fair judgment. Tr. 21, 354-55.

 Plaintiff continued to appear for appointments with Dr. Goldmeier throughout 2017 and

2018. Tr. 839-80. The ALJ summarized the treatment notes from those visits as showing little

change in Plaintiff's symptoms or treatment and noted Plaintiff generally reported herself as

doing "'ok' with minor physical complaints, impaired sleep, impaired concentration, low

appetite (accompanied, however, by weight gain), and fatigue." Tr. 22, 839, 845, 847, 851, 853,

857, 859, 863, 865, 869, 871. Dr. Goldmeier consistently assessed Plaintiff as "stable" with no

more than mild exacerbation. Tr. 21-22, 843, 849, 856, 861, 867, 874. The record also contains

an August 16, 2018 psychiatric exam by Dr. Goldmeier in which he wrote Plaintiff was "alert

and cooperative, in no acute distress," "flow of thought is within normal limits," "mood is ok,"

"appears alert and oriented," "insight and judgment are fair," "concentration is ok," "stable or improved" generalized anxiety disorder, "stable or improved" major depressive disorder, and "doing fairly well" with no need for medication changes. Tr. 881-83.

The ALJ considered the June 27, 2017 opinion of state disability reviewing physician, Dr. Rene Duproy, M.D. Tr. 22, 84-88, 91. Dr. Duproy opined Plaintiff had the non-severe impairments of depression and anxiety with mild limitations in the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Tr. 88. The ALJ found Dr. Duproy's report to be somewhat persuasive, but that Plaintiff's "obesity would reasonably limit her ability to function as more fully described in the residual functional capacity." Tr. 22.

The ALJ acknowledged the opinion of state disability reviewing psychologist, Dr. Raphael Smith, Psy.D., but found it to be unpersuasive. Tr. 22, 88-90. Dr. Smith found Plaintiff's mental function to be only mildly impaired, but the ALJ stated that such an opinion conflicted with Dr. Goldmeier's treatment records which indicated a persistent disruption of the Plaintiff's ability to concentrate and tolerate social interaction. Tr. 22.

The ALJ also considered Plaintiff's daily activities; she is able to play games on her phone and tablet, care for her grandson frequently, care for herself and her finances, complete household chores, cook and bake, and leave her home without assistance. *Id*. The ALJ noted Plaintiff does "not live in a highly structured environment, has no hospitalizations during the alleged period," "receives only basic therapy and medication management through her psychiatrist," and "has never been recommended for any inpatient or intensive outpatient therapy." *Id. See Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (ALJ's finding that plaintiff

was not disabled was supported by substantial evidence in the record where, inter alia, plaintiff's treatment had been essentially routine and/or conservative in nature).

Lastly, the ALJ acknowledged the record contains a number of GAF scores. She found these scores unpersuasive because they are "of limited use in assessing the severity and limiting effects" of a mental impairment. They were "developed to assist practitioners in making treatment decisions" and not for the use of making disability determinations. Tr. 22-23.

Based on a careful review of the record, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and is not conclusory. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

The ALJ cited to sufficient medical evidence in determining Plaintiff's RFC; a summary of which has been discussed above. Dr. Goldmeier's treatment notes provide substantial evidence in support of the ALJ's RFC determination. Plaintiff repeatedly shared with Dr. Goldmeier that she was "doing okay." Tr. 839, 845, 853, 869. She consistently reported a low appetite but appeared with steady weight gain. Tr. 839, 845, 857. While she complained of inadequate sleep, she also reported seven to ten hours of sleep per night. Tr. 839, 845, 851, 857, 863. She experienced no side effects to her medication. Tr. 839, 845, 851, 857, 863, 869. Her mental status examinations generally reflected fair grooming and eye contact, appropriate and cooperative behavior, good orientation, an adequate fund of knowledge, "OK" recent memory, spontaneous speech with normal rate and volume, intact thought processes, no suicidal ideations, and fair judgment and insight. Tr. 840-41, 846-47, 858-59, 864-65, 870-71. Throughout 2017 and 2018 she had no change in diagnosis and was described as stable with no more than mild

exacerbations. Tr. 841, 843, 847, 850, 853, 856, 859, 861, 865, 867, 871, 874. In a detailed

record from August 16, 2018, Dr. Goldmeier performed a psychiatric exam and described her

depression and anxiety as "stable or improved" and "doing fairly well" with no need for

medication changes. Tr. 881-83.

The ALJ also considered Plaintiff's activities of daily living. Plaintiff's Function Report

indicates she is able to run errands with her daughter, care for her infant grandson, maintain her

own personal care, prepare meals twice per day, clean, do laundry, shop, handle finances, play

games, spend time with others "as often as [she] can," walk a mile before needing rest, and gets

along with authority figures. Tr. 239-45. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir.

2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence

regarding her activities of daily living also raised legitimate concerns about her credibility").

These records and those cited by the ALJ, substantially support the ALJ's RFC

determination of medium work with limitations. Although the ALJ acknowledged Plaintiff has a

persistent disruption in her ability to concentrate and tolerate social interactions, the ALJ

accounted for these disruptions in her RFC by limiting her to performing only simple routine

tasks in an environment with few changes in setting or duties and only occasional interactions

with supervisors, coworkers, and the public.

The Court cannot agree with Plaintiff's argument that remand is required due to the

ALJ's failure to cite to the Third-Party Function Report submitted by Plaintiff's daughter. The

Third-Party Function Report is substantially similar to Plaintiff's own Function Report, both

describing Plaintiff's symptoms, limitations, and activities of daily living, which the ALJ

expressly considered and partially discredited in the decision. Tr. 21, 269-276. For example,

Plaintiff's daughter wrote Plaintiff is able to care for her grandson up to six hours per day, wash

13

dishes, cook, sweep, mop, do laundry, play games and shop, but has difficulties with self-isolation behavior and a lack of motivation. The ALJ considered these activities of daily living in the decision along with reports of her limitations similarly described in Plaintiff's own Function Report and hearing testimony. As such, even if the ALJ's failure to specifically discuss the Third-Party Function Report in the decision was error, it was harmless. *See Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (ALJ's failure to expressly address a third-party statement did not require remand when the same evidence that the ALJ referred to in discrediting Plaintiff also discredited the third-party statement). *See also Shepard v. Colvin*, No. 5:13-CV-442-MTT, 2015 WL 919097, at *3 (M.D. Ga. Mar. 3, 2015*)* (a third-party report not discussed in an ALJ's opinion, which provides information cumulative to that which Plaintiff provided in her own functional report is, at minimum, a harmless error); *Trujillo v. Colvin*, No. 14-1127-MLB, 2015 WL 5010188, at *5 (D. Kan. Aug. 21, 2015) (finding harmless error when ALJ fails to address a third-party function report, but does address the Plaintiff's own function report which was essentially cumulative in content).

There was also no obligation for the ALJ to consider Plaintiff's GAF scores, although the ALJ did acknowledge the scores, but found them unpersuasive. Tr. 22-23. The Eighth Circuit Court of Appeals has concluded that GAF scores have "little value" and the level of severity denoted by a GAF score does not correlate to the severity requirements under the Social Security Act. *See Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing *Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010)) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings"). Accordingly, a "litany of GAF scores in the 41-50 range, although indicating a serious problem

14

with occupational functioning in the DSM–IV sense, does not necessitate a finding of disabling limitations under the Act." *Doolittle v. Colvin*, No. 13-CV-04261-C-DGK-SSA, 2014 WL 7369635, at *2 (W.D. Mo. Dec. 29, 2014). "[T]he failure to reference a Global Assessment of Functioning score is not, standing alone, sufficient ground to reverse a disability determination." *Jones*, 619 F.3d at 973 ("We are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citations omitted). Essentially, "GAF scores are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported and consistent with other record evidence it is entitled to little weight." *Evanoff v. Berryhill*, No. 2:17-CV-41-JMB, 2018 WL 4489362, at *6 (E.D. Mo. Sept. 19, 2018). Accordingly, the ALJ did not err in failing to give greater consideration to Plaintiff's GAF scores. The GAF scores, in and of themselves, do not demonstrate the ALJ's decision is not supported by substantial evidence.

Plaintiff also takes issue with the ALJ's reliance on Dr. Goldmeier's description of her symptoms as "stable," arguing that a stable condition does not imply a lack of disability. However, the ALJ's decision demonstrates that Dr. Goldmeier's notes regarding Plaintiff's general stability was only one factor in the totality of the medical evidence used to determine Plaintiff's RFC. The decision is further supported by the content of Dr. Goldmeier's treatment notes which reflect fairly consistent mental and physical examinations.

In conclusion, the Court finds the ALJ's RFC determination is consistent with the relevant evidence of record, including the objective medical evidence and the observations of medical providers, as well as the medical opinion evidence and the evaluation of Plaintiff's subjective complaints.

### C. Vocational Testimony

Plaintiff argues the ALJ's decision is not supported by substantial evidence at Step Five of the Sequential Evaluation Process. Specifically, Plaintiff contends the ALJ improperly relied on the VE's testimony because the source the VE used to determine the number of jobs available in the national economy accounted for 35-hour weeks, not 40-hour weeks. Plaintiff further argues the ALJ improperly engaged in her own vocational analysis using unsupported conclusions based on irrelevant statistics and data from different years. ECF No. 13 at 13-16.

At the hearing before the ALJ, VE Thomas Upton, Ph.D., testified that a hypothetical person of Plaintiff's age, education, experience, and RFC could perform jobs in the national economy, including hand packager, laundry laborer, and kitchen helper. Tr. 78-79. The VE further testified that nationally there were 161,000 jobs with the hand packager classification, 80,000 jobs with the laundry laborer classification, and 300,000 jobs with the kitchen helper classification. Tr. 79. When asked by the ALJ about the source he used for these numbers, the VE cited to the "2017 first quarter US publishing" which "uses pure census numbers [from the] Department of Labor." Tr. 81. When asked by the ALJ whether his testimony was consistent with the DOT, the VE responded: "Yes, it's been consistent. But additionally, some other details are from all my training and that sort of stuff – training, knowledge, and work[.]" *Id.* Dr. Upton's resume is included in the record to support his professional experience. Tr. 303-14.

On December 18, 2018, Plaintiff submitted a post-hearing brief to the ALJ regarding the VE's testimony. In relevant part, Plaintiff argued:

> Social Security Ruling 00 – 4p recognizes that the vocational testimony must comport with the Commissioner's definitions of substantial gainful activity. As part of that definition it's noted that the definition is for full-time employment which is 40 hours a week. The vocational expert indicated that he relied upon US Publishing data from the first quarter 2017 and the Department of Labor and Bureau of Labor Statistics on the census. Materials from US Publishing indicate that they define full-

16

time employment as 35 hours a week or more. Therefore, there exists a material difference between the standards utilized in the US Publishing data and the standards utilized by the Social Security Administration for substantial gainful activity. Therefore, Plaintiff submits that the foundation for the numbers of jobs that the vocational expert cited does not comport to the definitions of substantial gainful activity utilized by the Social Security Administration and therefore, the vocational expert testimony is in conflict with Social Security Ruling 00 – 4p in the Commissioner's definitions.

Tr. 315.

The ALJ's opinion addressed and overruled Plaintiff's arguments in the post-hearing brief as follows:

The claimant's representative objected to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. I overrule this objection. The vocational expert has professional knowledge and experience in job placement. The representative objected on the basis that the jobs included in the U.S. publishing numbers do not necessarily meet the requirement of full time work (40 hour work week) as defined in SSR 00-4p and SSR 96-8p. I reject this argument as well. The Bureau of Labor Statistics uses data from the National Compensation Survey (NCS) for certain analytical purposes. NCS data from March, 2013, indicate that 74% of all employees work full time jobs of 40 hours per week. The average workweek for all employees is 35, but this factors in the 26% of jobs that are considered part-time, working an average of 21 hours per week. This percentage does vary by industry. https://www.bls.gov/opub/mlr/2015/ article/the-relationship-between-access-to-benefits-and-weekly-work-hours.htm. If 74% of the jobs cited by the expert were 40 hour per week jobs, the number would be significant. While this report uses data from March 2013, I note that even if only *ten* percent of the jobs cited by the vocational expert were 40 hour per week jobs, the job numbers would still be significant.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Where it differed, he relied upon his experience and training, and I found his testimony to be credible and persuasive.

Tr. 24.

Plaintiff argues the resources relied upon by the VE do not support the notion that

substantial numbers of full-time jobs exist in the national economy. Plaintiff argues the VE's

testimony was improperly based on census data which defines full-time work as 35 hours per

17

work week while the Social Security Administration defines full-time work as 40 hours per week. In response, the Commissioner argues a VE is "neither required to articulate the percentage of jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that was readily available," and a VE "may adjust his estimate of the number of existing jobs a claimant can perform." ECF No. 19 at 16. The Commissioner further counters Plaintiff's arguments by asserting: "Social Security Ruling 00-4p requires the expert to explain what he relied upon to reach his conclusion. Dr. Upton's explanation that he based his testimony in part on official federal statistics satisfies that requirement." *Id.* The Court agrees with the Commissioner.

The Eighth Circuit has explicitly stated there is no requirement for a VE to testify as to how many full-time jobs in a specific classification would be available for a plaintiff:

> Once it is established that the claimant cannot return to her previous occupation, the Commissioner bears the burden to show that a significant number of appropriate jobs exist for the claimant. 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). The vocational expert identified several jobs that [claimant] could perform and testified that there were thousands of such jobs in Illinois and Iowa. [Claimant] argues that this testimony was insufficient because it did not specify how many of these jobs were full-time, rather than part-time work. The vocational expert was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available. *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009). Accordingly, the vocational expert's testimony constituted substantial evidence that there were jobs available for [claimant].

*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010). *See also Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (where hypothetical includes impairments ALJ found credible and excluded those he discredited for legally sufficient reasons, VE's opinion that claimant could perform work existing in significant numbers in the national economy was substantial evidence supporting the ALJ's determination); *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated

hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers."); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 n.6 (2nd Cir. 2012) (following the Eighth Circuit and declining "to create a *per se* rule prohibiting an ALJ from considering part-time positions" and rejecting the plaintiff's argument "that the ALJ erred by allowing the VE to provide employment numbers that might have included part-time positions"). In sum, a "VE is only required to state his opinion as to the number of jobs available in the national economy to a person with the applicant's RFC, age, work experience, and education." *Kelly v. Colvin*, No. 4:13 CV 1891-CDP, 2015 WL 94252, at *5 (E.D. Mo. Jan. 7, 2015) (citing *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991)).

The Social Security Administration addresses the use of vocational expert testimony in SSR 00-4p. *See* 2000 WL 1898704 (S.S.S. Dec. 4, 200). The Eighth Circuit has construed SSR 00-4p "as placing on the ALJ an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). "[I]f substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (internal quotation and citation omitted). "[U]nless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information." *Id.* at 1004.

Here, the ALJ asked the VE whether there were jobs in the national economy that a hypothetical individual of the Plaintiff's age, education, experience, and RFC could perform.

Plaintiff does not take issue with the hypothetical asked. The VE answered in the affirmative and provided examples of three categories of jobs the hypothetical individual could perform as well as an estimate of how many of those jobs existed in the national economy. The VE confirmed his testimony was consistent with the DOT and supported by the VE's own experience and training. The VE is not required to provide the number of total jobs for a DOT job description that align with a plaintiff's specific RFC, and part-time jobs can be included within the total number of jobs provided. The ALJ properly relied on the VE's testimony that Plaintiff could perform jobs that generally existed in significant numbers in the national economy. 20 C.F.R. § 404.1566. The DOT is listed as an accepted source for national employment information in the governing regulations. *See* 20 C.F.R. § 404.1566(d)(1). Thus, the ALJ appropriately found the VE's testimony to be consistent with the DOT, and the ALJ properly relied on the testimony.

Although the ALJ pointed to additional statistical data in her opinion to further support the VE's testimony that substantial numbers of full-time jobs exist in the national economy, doing so did not invalidate her reliance on the VE's testimony. *See Kelly*, 2015 WL 94252, at *5 ("even if a large percentage of the available jobs described by the VE were part time, that does not mean that the ALJ's decision was unreasonable" as long as "the job numbers would have contained many full time jobs as well").

Substantial evidence supports the ALJ's determination that the VE's testimony was consistent with the DOT. Additionally, the Court concludes the ALJ did not err in relying on the VE's testimony that a significant number of jobs were available to Plaintiff in the national economy, even though some unknown percentage were part-time jobs.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff Patricia Kuchler's Complaint is **DISMISSED, with prejudice**. A separate judgment

will accompany this Memorandum and Order.

So Ordered this 11th day of January, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**